OPINION OF THE COURT
M. Marvin Berger, J.
This case brings up a fairly common problem, which, however, appears never before to have been the subject of a reported opinion in this State.
The question is whether there is a conflict of interest where the same District Attorney’s office prosecutes two cross complaints for assault arising out of a single incident.
Specifically, in the instant case Nicholas Schiraldi was charged with assaulting Norman Seaman on February 28, 1977. However, Schiraldi charged Seaman with assault arising out of the same encounter. That charge was dismissed on July 20, 1977, by a Judge of this court, who also denied Seaman’s motion that the District Attorney be recused, and that the *344 court appoint a special prosecutor to present the People’s case against him.
Schiraldi now moves for the same relief. He claims that prosecution of cross complaints creates a conflict of interest, because any member of the prosecutor’s staff is chargeable with the knowledge of any other staff member — citing Santobello v New York (404 US 257) and People v Selikoff (35 NY2d 227), in support of his position. He asserts that for one Assistant District Attorney to prosecute a person who is presented by another District Attorney as a complaining witness, in a companion prosecution, arising out of the same incident, demonstrates each assistant prosecutor’s disbelief in the testimony of the other complainant. The conduct of both prosecutors is disrespectful of the court and indeed borders on contempt.
By analogy to cases of a lawyer representing two defendants with conflicting interests (e.g., People v Byrne, 17 NY2d 209) and by reference to the American Bar Association Standards of Criminal Justice — The Prosecutorial Function, Part I — section 1.2 — Conflicts of Interest — the action of the District Attorney in prosecuting both cases, says Schiraldi, approaches unethical or illegal conduct.
Research by the court among prosecutors’ offices in New York City discloses several methods of overcoming the procedural problems involved in the handling of cross complaints by the courts and the prosecution.
Some District Attorneys decide to prosecute only one of the cross complaints, either before or after a preliminary hearing.
Some Judges require a hearing for each complaint by different Judges, followed by separate trials. Often a Judge persuades each complainant to withdraw the charges against the other, or, if unsuccessful, to stipulate that one Judge may hear both cases and render a single decision dispositive of both complaints.
But no precedent can be found in New York for granting the relief sought by Schiraldi, on the grounds he urges. A study by Naomi Werne, an attorney on the staff of the New York Bureau of Prosecution and Defense Services of the Division of Criminal Justice Services, discloses one reported case on the subject — People v Municipal Ct. for Ventura County Judicial Dist. (27 Cal App 3d 193), a case involving the filing of cross complaints arising out of a single incident of assault. There, Bishop, one complainant, drove through a *345 populated area where fireworks were being set off on July 4. Two residents of the neighborhood, Pellegrino and Stromstad, the initial defendants, assaulted him. He filed a complaint, but the two defendants retained a private attorney, one Siple, who requested the Judge at arraignment, over the objection of the District Attorney, to charge Bishop with assault on the defendants, and traffic violations, and appoint Siple as special prosecutor to prosecute Bishop. The trial court granted this request, but the California Court of Appeals reversed the order holding that (1) the decision to prosecute was the District Attorney’s and he had decided that the two initial defendants’ claim was frivolous, and (2) California statutes give the Attorney General only the power to appoint a special prosecutor. Thus this case differs from the instant case in that (1) the District Attorney decided to prosecute both cases and, therefore, did not find one frivolous, and (2) section 701 of the County Law specifically gives the court the power to appoint a Special District Attorney where the District Attorney is disqualified. However, there is pertinent dicta in the California case. The California court states (p 207):
"Had the district attorney approved of or instituted criminal proceedings against Bishop we can assume that he would have actively prosecuted the case and the controversy would not have arisen.
"The fact that Bishop was to be a witness for the prosecution in the cases against Pellegrino and Stromstad [the initial defendants] would not have prevented the district attorney from acting as prosecuting attorney in the case against Bishop. It frequently occurs that a district attorney is called upon to and does prosecute persons who are or have been prosecution witnesses.
"Witnesses for the prosecution, including the victim himself are not parties to a criminal prosecution and the action is not brought in their interests as individuals or on their behalf. Thus the relationship between them and the district attorney is not that of attorney and client. (Gov. Code § 26500.)” (Emphasis supplied.)
Thus, the court in People v Municipal Ct. for Ventura Judicial Dist. (supra), saw no conflict of interest in the same District Attorney’s office prosecuting two persons, each charging the other with assault.
Arguably, the dicta might imply existence of a rule in conflict with the A.B.A. Standards, Prosecution Function *346 (§ 3.9, subd [b], par [i]), stating that a prosecutor should not charge where he has a reasonable doubt as to the defendant’s guilt. Conceivably, the prosecutor may entertain such a doubt where the defendant in an assault case is the complaining witness in a simultaneous cross complaint. Yet, unless he assumes the role of Judge or jury as a fact-finder, he may properly abstain from deciding to prosecute only one of two cross complaints.
The disqualification problem usually arises because of an alleged earlier attorney-client relationship between the prosecutor and the accused (31 ALR 3d 953, 957). Interestingly, none of the cases cited in the ALR annotation mentions a conflict arising out of prosecution by a single office of criminal cross complaints. The reported cases of disqualification generally involve situations in which the prosecutor has had a personal interest in the outcome of the case, either by virtue of being the victim of a crime or because the prosecutor had prior professional involvement with the defendant (People v Krstovich, 72 Misc 2d 90; People v Rupp, 75 Misc 2d 683).
The key question in determining whether there is a conflict of interest, if the same District Attorney’s office prosecutes on behalf of two complaining witnesses, each of whom is a defendant vis-á-vis the other, charged with assault based on the same incident, is whether the knowledge that each Assistant District Attorney obtains from each complainant-defendant may be imputed to the other assistant. The Selikoff (35 NY2d 227, supra) and Santobello (404 US 257, supra) cases cited by the defendant are inapposite. They simply hold that the entire District Attorney’s office is charged with knowledge of promises made to defendants in the course of a prosecution. Selikoff and Santobello do not support the view that one member of the District Attorney’s staff is chargeable with knowledge of confidential information obtained by another member of the District Attorney’s staff.
In a number of reported cases, defendants have been prosecuted by a District Attorney’s office whose staff includes a lawyer who is not prosecuting that defendant but who represented a defendant or his codefendant before joining the District Attorney’s office (People v Cruz, 55 AD2d 921; People v Washington, 52 AD2d 984; Matter of Fox v Shapiro, 84 Misc 2d 223; People v Loewinger, 37 AD2d 675, affd without opn 30 NY2d 587). These cases uniformly hold that it must not be presumed that a District Attorney or Assistant District Attor *347 ney will divulge confidential information obtained from a party he once represented, to any colleague who is prosecuting or will prosecute such party.
In People v Loewinger (37 AD2d 675, supra) the defendant was indicted for second degree assault and escape, allegedly committed when police officers came to arrest him for his failure to respond to a summons for a violation of the Vehicle and Traffic Law, on which charge he had been represented by Gellman, an attorney. Gellman then became Chief Assistant District Attorney. At the commencement of his trial, appellant was represented by two attorneys, one of whom, Cohen, later withdrew from the case because he had formerly served as an Assistant District Attorney and in that capacity he had answered a telephone call relating to the defendant’s case. The defendant was convicted and then claimed that he had been prejudiced by a conflict of interest because of Cohen’s brief representation and the fact that Gellman had formerly represented him on the traffic charge which precipitated the attempted arrest, at which time the defendant allegedly committed the felonies for which he was convicted. The court found that since Cohen had withdrawn as soon as he discovered that he had a slight connection with the case, the defendant had not been prejudiced. The court further ruled that there was (p 676) "no conflict of interest resulting in prejudice to appellant because Chief Assistant District Attorney Gellman had once represented appellant on the traffic charge out of which this incident arose. Since Gellman had no connection with the case while in the District Attorney’s office, the entire office should not be disqualified.”
Similarly, in Fox v Shapiro (84 Misc 2d 223, supra), the District Attorney of Orange County, Shapiro, was the former chief attorney of the Orange County Legal Aid Society. Subsequent to Shapiro’s election as District Attorney, the Orange County Legal Aid Society brought an article 78 proceeding to disqualify Shapiro and his entire staff from prosecuting any persons who were represented by the Legal Aid Society at the time when Shapiro was the chief attorney of the Society, despite the fact that concededly after his election, Shapiro made arrangements to isolate himself from cases which had been in the Legal Aid office when he was its chief. The court, in denying the petition, stated that the presumption that confidential information obtained by one member of a law firm flows freely to the other members has been held by the *348 Court of Appeals not to apply to the members of a large legal aid office in People v Wilkins (28 NY2d 53 [discussed further, infra]). The court then added that assuming that this presumption does apply to a District Attorney’s office (pp 227-228) "its only effect would be to fix the District Attorney with presumptive knowledge of the details of cases which were in his office when he was chief Legal Aid attorney. In such a situation, the cases are uniform that a prosecutor with such presumed knowledge must be disqualified (People v Moore, 30 AD2d 720; People v Clement, 278 App Div 1040). This has been done. But there is no similar presumption that the District Attorney thus disqualified violated his duty as an attorney by passing such information along to his own assistants.” In the language of Louisiana v Brazile (231 La 90, 94): "Indeed, it is to be presumed that he, as a member of the bar in good standing, has and will respect the defendant’s confidence.” In Fox v Shapiro (supra, p 228), the court there noted "detailed arrangements were made by the District Attorney and his staff, after his appointment and immediately prior to the assumption of his new office, which isolated the District Attorney from the files and from the members of his staff with respect to these cases.”
Finally, the court held (p 228) that: "it is not improper for the Assistant District Attorneys to proceed in good faith to prosecute these cases as they have been directed to do by the District Attorney, provided they scrupulously observe the rules which isolate them from contact with the District Attorney with respect to these cases.”
In another case, arising out of Shapiro’s election, People v Cruz (55 AD2d 921, supra) the defendant was convicted of possession and sale of a controlled substance. He moved to disqualify the Assistant District Attorney on the ground that Mr. Shapiro was chief attorney for the Legal Aid Society which represented defendant at arraignment. The trial court denied the defendant’s motion to disqualify on the ground that he had failed to show any prejudice, and the defendant was convicted. The Appellate Division, Second Department, remanded the case for a hearing to determine if the defendant had been prejudiced, holding that only a showing of demonstrable prejudice could be the basis for disqualifying the Assistant District Attorney.
In People v Washington (52 AD2d 984, supra), the court refused to appoint a Special District Attorney to prosecute the *349 defendant where an Assistant District Attorney prior to joining that District Attorney’s office had represented the defendant’s codefendant at his earlier separate trial and had conferred with the defendant’s attorney because that assistant submitted an affidavit stating that he had not discussed and would not discuss the defendant’s case with the assistant who was prosecuting the defendant.
We now come to the issue of whether confidential information by an attorney may be assumed to be shared by a colleague.
In People v Wilkins (28 NY2d 53, supra) the Court of Appeals held that knowledge of confidential information obtained by one staff attorney of a branch of the Legal Aid Society will not, as a matter of law, be imputed to any other attorney on the staff of that branch. Accordingly, the court upheld the denial of coram nobis relief to a convicted defendant, who claimed he had been prejudiced because he had been represented by a staff attorney of the Bronx office of the Legal Aid Society and another attorney on the Society’s Bronx office staff had represented the complainant in an unrelated criminal proceeding. The court stated (p 56):
"While it is true that for the purpose of disqualification of counsel, knowledge of one member of a law firm will be imputed by inference to all members of that law firm (Laskey Bros. of W. Va. v. Warner Bros. Pictures 224 F.2d 824), we do not believe the same rationale should apply to a large public-defense organization such as the Legal Aid Society. The premise upon which disqualification of law partners is based is that there is within the law partnership a free flow of information, so that knowledge of one member of the firm is knowledge to all * * *
"In view of the nature of the organization [the Legal Aid Society] and the scope of its activities, we cannot presume that complete and full flow of 'client’ information between staff attorneys exists, in order to impute knowledge to each staff attorney within the office.”
In Matter of Charles L. (63 Cal App 3d 760), defendant minor appealed from a judgment declaring him a ward of the court on the ground that the court failed to disqualify the District Attorney’s office for conflict of interest. At arraignment another minor, allegedly participating in the robbery with which appellant was charged, was represented by Eugene Hall. Appellant was represented by another attorney. After *350 arraignment, but before a hearing, Hall joined the Los Angeles County District Attorney’s office.
The California Court of Appeals for the Second District, affirming the adjudication and thus rejecting the appellant’s argument, stated (pp 765-766):
"The naked fact that some member of the district attorney’s office might have had some confidential information respecting appellant’s case is insufficient, ipso facto, to constitute a conflict.
"We need not question the proposition: 'An attorney cannot be permitted to assist in the prosecution of a criminal case if by reason of his professional relations with the accused he has acquired a knowledge of the facts upon which the prosecution is predicated or which are closely interwoven therewith.’ (People v. Curry, 1 Ill. App. 3d 87 [272 N.E.2d 669, 672]; Thoreson v. State, 69 Okl. Crim. 128 [100 P.2d 896, 899]), or the decisions in some states holding that participation in the defense of an accused by an attorney who later becomes a member of the staff of the office of the prosecutor must result in a disqualification of the prosecutor’s office in order to preserve the appearance as well as the substance of fairness. (E.g. State v. Latigue, 108 Ariz. 521 [502 P.2d 1340]; State v. Chambers, 86 N.M. 383 [524 P.2d 999].) This is simply a different case. Hall did not represent or participate in the representation of the petitioner; appellant was never represented by Hall; there is no showing that appellant’s confidences were divulged to Hall; and finally, there is no reason to believe that such information, were Hall in possession of it, should be imputed to the whole of the district attorney’s staff. (See People v. Washington, 52 App. Div. 984 [383 N.Y.S.2d 422, 423]; People v. Loewinger, 37 App. Div. 2d 675 [323 N.Y.S.2d 98, 100-101], affd 30 N.Y.2d 587 [330 N.Y.S.2d 801, 281 N.E. 2d 847]; State v. Miner, 128 Vt. 55 [258 A. 2d 815, 817-819].) There is here neither real nor apparent impropriety.”
In State v Johnson (549 SW2d 348 [Mo]), defendant appealed from a conviction of murder. The Missouri Court of Appeals held that: (1) no conflict of interest existed as result of representation of defendant by member of public defender’s office when another staff attorney from same office had represented in a prior unrelated criminal proceeding a potential prosecution witness who, upon apparent advice of that staff attorney, made it clear that he would invoke his right to remain silent *351 in instant prosecution, as result of which he was never called as a witness.
In denying this point of the appeal, the court stated (p 351): "Here, however, the initial inquiry must be whether a conflict of interest situation actually existed. Mason v. State, 468 S.W.2d 617, 620[1] (Mo. 1971). A conflict of interest such as to deny to a defendant the effective assistance of counsel must be shown by evidence. Commonwealth v. Smith, 362 Mass. 782, 291 N.E.2d 607, 609[4] (1973). In order to evidence a conflict of interest something must have been done by counsel in the trial, or something must have been foregone by counsel and lost to defendant, which was detrimental to the interests of defendant and advantageous to the interests of witness Lee. Mooring v. State, 501 S.W.2d 7, 11[4] (Mo.1973); Mason v. State, supra at 620[1], No such evidence appears in this record. It is difficult for us to imagine how the interests of defendant conflicted, per se, with those of potential prosecution witness Lee when Lee was never called as a witness due to his invocation of the right to remain silent. Absent some showing of a conflict of interest the fact that one attorney from a large public defense organization represents a defendant in a criminal trial, after another staff attorney from that same organization represented a prosecution witness in a concluded and unrelated matter, does not create a per se conflict of interest at defendant’s trial. People v. Wilkins, 28 N.Y.2d 53, 320 N.Y.S.2d 8, 268 N.E.2d 756 (1971). Finding no conflict of interest in the instant situation, we deny this point of defendant’s appeal.”
If a Legal Aid office, whose attorneys have an attorney-client relationship with the people they defend, is not analogous to a law partnership and the free flow of information from one member of the staff to another will not be presumed, there is even less reason to presume divulgence of confidential information by one Assistant District Attorney to another on the same staff, because where a District Attorney’s office is concerned, there is no attorney-client relationship to be protected.
Finally, in respect to the argument that the court has power to appoint a special District Attorney, the court notes that the power may be limited in scope. In People v Rupp (75 Misc 2d 683, supra), the court held that section 701 of the County Law does not authorize the appointment of a Special "Assistant” District Attorney. The court in that case removed the District *352 Attorney’s disqualification and vacated the appointment of a special assistant, which had been ordered by the County Court, on two grounds: first, that there was no authority in section 701 of the County Law for the appointment of a Special "Assistant” District Attorney but only of a Special "District Attorneyand second, the unspecified conflict of interest between the District Attorney and one of his assistants should not result in the disqualification of the District Attorney’s entire staff. The court appears to imply that if a special prosecutor is appointed pursuant to section 701 of the County Law to prosecute only one case, he is a "Special Assistant District Attorney” rather than a "Special District Attorney.”
However, in view of the holding that there is no conflict of interest apparent in the instant case, we need not deal further with this point.
The motion is denied and the case will proceed to trial.