■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v JACQUES L. RIVETTE, Appellant. [798 NYS2d 188]—

Mercure, J. Appeals (1) from a judgment of the County Court of Rensselaer County (McGrath, J.), rendered September 18, 1996, upon a verdict convicting defendant of the crimes of murder in the second degree (two counts) and robbery in the first degree, and (2) by permission, from three orders of said court, entered May 15, 2000, January 31, 2001 and May 5, 2004, which denied defendant's motions pursuant to CPL 440.10 to vacate the judgment of conviction, without a hearing.

In March 1995, defendant was indicted and charged with the crimes of second degree murder (four counts), first degree robbery and second degree burglary in connection with an October 1987 robbery and murder of a manager of a Stewart's shop in the City of Troy, Rensselaer County. Defendant was charged individually on the first two counts of second degree murder and as a codefendant and accomplice with Timothy Thorsen on the remaining four counts. Following a joint jury trial, defendant was found guilty of murder in the second degree (two counts) and robbery in the first degree, and he was sentenced to an aggregate prison term of 37½ years to life.*

Thereafter, this Court dismissed a CPLR article 78 proceeding in the nature of prohibition commenced by defendant, who claimed that County Court acted in excess of its authority in appointing a special district attorney to represent the People in this matter (*Matter of Rivette v McGrath*, 241 AD2d 717, 717 [1997]). We determined that defendant's proper remedy would be a direct appeal from his conviction (*id.*). County Court denied defendant's three subsequent CPL 440.10 motions seeking to vacate his conviction on various grounds. Defendant now appeals from the judgment of conviction and, with this Court's permission, from the denial of his CPL 440.10 motions.

---

* Thorsen was found guilty of one count of murder in the second degree, as well as robbery in the first degree. His appeals from his conviction and post-judgment motion are decided herewith.

Initially, we reject defendant's assertions that the verdict was against the weight of the evidence and that there was insufficient proof to support his convictions. The crime of murder in the second degree under Penal Law § 125.25 (1) requires a showing that the defendant intended to cause the death of another person and caused the death of that person or a third person. Under Penal Law § 125.25 (3), a person is guilty of murder when, as relevant here, he or she "commits or attempts to commit robbery [or] burglary . . . and, in the course of and in furtherance of such crime or of immediate flight therefrom, [the defendant] or another participant . . . causes the death of a person other than one of the participants." In order to prove the crime of robbery in the first degree, the People must demonstrate that the defendant forcibly stole property while he or she was armed with a deadly weapon during the commission of the crime or during the immediate flight therefrom (see Penal Law § 160.15 [2]).

Here, the People produced testimony from various employees of Stewart's indicating that approximately $5,000 and possibly some cigarettes were missing from the store following the murder. Friends and acquaintances of defendant testified that on the morning of the murder, defendant sought to purchase drugs and was refused because he lacked money and was in debt to the sellers. Later that day, defendant and Thorsen had both money and guns and defendant subsequently bragged to several friends about robbing the Stewart's shop, taking the victim into the back room to open the safe, making him lie down and shooting him in the back of the head. While he was in jail, defendant repeated these admissions to another inmate, claiming that he had killed the victim, then took the money from the safe, as well as cigarettes and lighters, and ran out of the store. Further, the People also introduced evidence that a .22 caliber bullet was removed from the victim's skull and testimony regarding a .22 caliber revolver that was once owned by Thorsen but inadvertently destroyed by police.

Viewing this evidence in the light most favorable to the People, as we must, we conclude that there is a "valid line of reasoning and permissible inferences which could lead a rational person to the conclusion reached by the jury on the basis of the evidence at trial" (People v Bleakley, 69 NY2d 490, 495 [1987]). Considering the evidence in a neutral light and giving deference to the jury's opportunity to view the witnesses, hear their testimony and observe their demeanor, we conclude that defendant's convictions were not against the weight of the evidence (see id.). Moreover, inasmuch as his convictions were

based upon legally sufficient trial evidence, defendant's challenge to the denial of his motions to dismiss the indictment for insufficiency of the evidence presented to the grand jury is foreclosed (*see* CPL 210.30 [6]; *People v Civitello*, 287 AD2d 784, 786 [2001], *lv denied* 97 NY2d 703 [2002]; *People v Alameen*, 264 AD2d 937, 939 [1999], *lv denied* 94 NY2d 819 [1999]; *see also People v Nitzberg*, 289 NY 523, 529-530 [1943]). To the extent that defendant asserts in addition that the grand jury process was tainted because the People introduced testimony from two witnesses suggesting that cigarettes may have been stolen in the course of the robbery when an all points police bulletin indicated that no cigarettes were stolen, we conclude that any alleged error in this regard did not impair the integrity of the proceeding or cause prejudice to defendant (*see People v Levandowski*, 8 AD3d 898, 900 [2004]; *People v Carey*, 241 AD2d 748, 751 [1997], *lv denied* 90 NY2d 1010 [1997]).

We are further unpersuaded by defendant's argument that the failure of the People to produce the alleged murder weapon and certain fingernail scrapings, as well as the People's failure to disclose a plea deal with one of their material witnesses, constituted fatal *Brady* errors. "A defendant has the right, guaranteed by the Due Process Clauses of the Federal and State Constitutions, to discover *favorable* evidence in the People's possession which is *material* to guilt or punishment" (*People v Scott*, 88 NY2d 888, 890 [1996] [emphasis added and citations omitted]; *see People v Vilardi*, 76 NY2d 67, 73, 77 [1990]). With respect to the fingernail scrapings, there is no suggestion in the record that any associated evidence was exculpatory; instead, the record indicates only that such scrapings were taken and there is no evidence that tests were done. Regarding the witness's plea deal, defense counsel was evidently aware of the deal and its exculpatory nature. Thus, the People had no obligation to provide defendant with such evidence (*see People v Doshi*, 93 NY2d 499, 506-507 [1999]), and his CPL 440.10 motion directed at the plea deal was properly denied. With respect to the gun used to murder the victim, evidence was produced at trial that while the gun was inadvertently destroyed by the police, the bullet recovered from the victim had been so badly damaged that it was impossible to obtain a conclusive ballistics match to any gun. Inasmuch as the gun had limited evidentiary value, defendant was allowed to expose these limitations and County Court gave an adverse inference instruction to the jury, there is, in our view, no reasonable possibility, given the overwhelming evidence of defendant's guilt, that the failure to

produce the gun contributed to the jury's verdict (*see People v Pressley*, 91 NY2d 825, 827 [1997]).*

Also lacking in merit are defendant's contentions that County Court exceeded its authority in appointing a special district attorney and that there was a conflict of interest between the special district attorney and defendant. County Court's appointment of a special district attorney based on the District Attorney's demonstrated conflict of interest was well within its authority under County Law § 701 (*see generally Matter of Schumer v Holtzman*, 60 NY2d 46, 55 [1983]). Nor do we find any error in County Court's rejection of defendant's claim that a conflict of interest existed between the special district attorney and defendant because defendant contacted and discussed his case with a member of the special district attorney's firm. At a hearing on the matter, the special district attorney indicated that he had no knowledge of the contact, the attorney who spoke with defendant testified that he did not open a file for the case or take any notes of the conversation, and defendant admitted both that he revealed no information or details about the case other than what had been printed in the newspaper and that the attorney gave him no legal advice about his case. Hence, it cannot be said that there was any actual prejudice arising from the alleged conflict or a risk of an abuse of confidence such that disqualification would be justified (*see id.*; *Matter of Reina v Coccoma*, 256 AD2d 988, 990 [1998]; *see also People v Loewinger*, 37 AD2d 675, 676 [1971], *affd* 30 NY2d 587 [1972]).

Finally, we conclude that there is no merit to defendant's argument that County Court erred in imposing consecutive sentences on his intentional murder and robbery convictions. When "separate or successive acts have occurred in the course of a single criminal transaction, and neither is, by definition, a material element of the other, the trial court retains its discretionary consecutive sentencing authority" (*People v Bryant*, 92 NY2d 216, 231 [1998]). The elements of intentional murder in the second degree and robbery in the first degree as charged here do not overlap (*see* Penal Law § 125.25 [1]; § 160.15 [2]), and defendant's robbery at the Stewart's shop and subsequent murder of the victim were two separate acts. Indeed, defendant evidently admitted to murdering the victim as a gratuitous af-

---

* To the extent that defendant also argues that the all points police bulletin should have been provided to him by the People, we similarly conclude that the evidence regarding the cigarettes—even assuming it can be considered favorable—was minimal in light of the other evidence proving defendant's guilt and its presentation would not have affected the outcome of this case.

terthought, primarily because he became angry when the victim begged for his life. As such, County Court did not abuse its discretion in imposing consecutive terms of imprisonment (*see People v Salcedo,* 92 NY2d 1019, 1021-1022 [1998]).

Defendant's remaining arguments are either not properly before this Court or, upon consideration, have been found to be lacking in merit.

Cardona, P.J., Lahtinen and Kane, JJ., concur. Ordered that the judgment and orders are affirmed.